## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Timothy J. Clancy, and Nicole L. Clancy,
and Clancy's on Island Lake Inc d/b/a
Vacationaire Resorts and Clancy's                    CASE NO.: 18-cv-2249-JRT-LIB
Restaurant and Bar on Island Lake,

       Plaintiffs,

                                      PLAINTIFFS'
v.                                                   MEMORANDUM OF LAW
                                        IN OPPOSITION TO
Vacationaire Estates, Inc., and the Donald L. and     MOTION TO DISMISS
Sandra S. Flamm Community Property Trust,
and Donald L. Flamm, and Eric Phillip Flamm,
and Dena Ann Flamm, and Daniel Russ Elsey,
and Craig Bingen, and Todd Joel Jungwirth,
and Richard Joseph Jungwirth,

       Defendants.

_____/

The plaintiffs, through their counsel of record, oppose the *Defendants' Motion to Dismiss Plaintiffs' Complaint* filed on September 20, 2018, based on the following argument and citation of authority.

### INTRODUCTION

The plaintiffs have brought a civil claim under the Racketeer Influenced and Corrupt Organizations Act based not upon an issue of real property law addressed by the state court, but upon the defendants' wrongful acts during the pendency of that dispute.[1] Plaintiffs' claims are based on injury suffered as a result of the concerted efforts of the defendants to ruin their business and drive them off of their property because they

---

[1] The plaintiffs also have asserted separate state-law claims over which this court has supplemental jurisdiction.

asserted a claim adverse to the defendants in a real property dispute that has since been litigated in state court. The complaint includes a description of the real property dispute under the heading of "background" (see page four of the complaint), while differentiating the allegations supporting the plaintiffs' claims with the heading "conduct upon which plaintiffs' claims are based" (see page eight of the complaint). The defendants argue that the resolution of the real property issues precludes this action. Nothing in the decisions of the state court justifies the conduct of the defendants, and therefore their motion to dismiss should be denied.

## ARGUMENT

The complaint contains properly-pleaded claims for violation of the civil RICO statute, tortious interference with prospective economic advantage, nuisance, trespass, and defamation. The motion to dismiss notes that one named defendant is deceased and requests dismissal on that basis. The appropriate remedy is substitution of the defendant's estate as a defendant per Rule 25(a)(1). Application of the proper standards in reviewing the complaint will result in denial of the defendants' motion.[2]

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999),

---

[2] Local Rule 7.1(c)(3)(B) prohibits raising new grounds for relief in the reply memorandum. Accordingly, consideration of the plaintiffs' motion should be limited to the issues raised in the memorandum filed with the motion to dismiss.

or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

The defendants have argued that the plaintiffs' RICO claim is subject to the heightened pleading requirements of Rule 9(b), which requires pleading with particularity the circumstances surrounding fraud or mistake. The plaintiffs' claims are not based on allegations of fraud or mistake, and there is no Rule of Civil Procedure that requires a heightened pleading standard for RICO cases. The defendants argue, however, that "the Eighth Circuit and District of Minnesota city to *Crest Const. II, Inc. v. Doe* for the proposition that the 9(b) requirement applies to all RICO claims as well as for …those that sound in fraud." The defendants' statement suggests an interpretation of the *Crest*

*Construction* opinion that runs afoul of the Supreme Court's holding that "[a] requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Swierkiewicz v. Sorema NA*, 534 US 506, 515 (2002). This court should not accept the defendants' invitation to impose stricter pleading standards on RICO claims that do not sound in fraud.

## I. THE COMPLAINT COMPLIES WITH RULE 8

The complaint contains factual allegations that provide the grounds for relief on the claims identified in the complaint. The defendants argue that the complaint fails to specify the claims asserted, while quoting portions of the complaint that specifically list the asserted claims. They then argue that the complaint fails to provide a formulaic recitation of the elements of the asserted claims, while correctly citing authority that formulaic recitation of the elements fails to satisfy the pleading standard. Those arguments fail to support the defendants' motion.

## II. COLLATERAL ESTOPPEL IS INAPPLICABLE TO THE CLAIMS ASSERED IN THE COMPLAINT

The defendants argue that "any claims based on the premise that Plaintiffs have a property interest in the parking lot or Icon Drive should be dismissed." They do not identify which claims should be dismissed on this basis. The claims asserted by the plaintiffs are based on the conduct of the defendants during the course of a dispute over property rights, but are not based on the disputed property rights. As correctly cited by the defendants, collateral estoppel bars re-litigation of an issue that is identical to one in a

prior adjudication. *All Finish Concrete, Inc. v. Erickson*, 899 N.W.2d 557 (Minn.App. 2017). There is no identity of issues, however, between this case and the case litigated in state court. Accordingly, collateral estoppel does not provide a basis for dismissal.

### III. VACATIONAIRE ESTATES, INC., IS NOT ENTITLED TO DISMISSAL ON ITS AFFIRMATIVE DEFENSE OF THE INDIVIDUALS' LACK OF AUTHORITY TO ACT ON ITS BEHALF

The defendants advocate dismissal of all claims against Vacationaire Estates, Inc., based on the argument that Vacationaire Estates, Inc., is not liable for the actions of its members.[3] Necessary to the defendants' argument is a finding that the members' actions were *ultra vires*. That is an affirmative defense. *See, e.g.*, *Gethsemane Lutheran Church v. Zacho*, 104 N.W.2d 645 (Minn. 1960); *also*, *Rehn v. Fischley*, 557 N.W.2d 328, 332-33 (Minn. 1997). A properly-pleaded complaint is not required to anticipate and avoid every potential affirmative defense. *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014) (holding that neither *Iqbal* nor *Twombly* suggest a departure from the holding in *Gomez v. Toledo*, 446 U.S. 635, 640 (1980), that complaints need not anticipate affirmative defenses). The defendants' assertion of an affirmative defense that does not appear on the face of the complaint cannot be the basis for granting their motion to dismiss.

### IV. THE ALLEGATIONS OF THE COMPLAINT ARE SUFFICIENT TO PROPERLY PLEAD THE RICO CLAIM

The complaint sufficiently pleads a claim for relief under the civil RICO statute that meets the requirement of Rule 8 of the Federal Rules of Civil Procedure. As

---

[3] Plaintiffs do not assert a RICO claim against Vacationaire Estates, Inc., because Vacationaire Estates, Inc., is the RICO enterprise. (See paragraphs 84 and 85 of the complaint).

discussed in greater detail above, the court should not accept the defendants' invitation to impose a stricter pleading standard for this RICO claim that is not based on allegations of fraud. To do so would contravene the Supreme Court's holding that "[a] requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." *Swierkiewicz v. Sorema NA*, 534 US 506, 515 (2002).

The defendants accuse the plaintiffs of attempting to convert an ordinary civil dispute into a RICO case (see page 36 of the defendants' memorandum of law). The complaint makes clear, however, that this is not an ordinary civil dispute. This is not a case in which the RICO statute is being used as a "tool for everyday fraud cases brought against respected and legitimate enterprises." *Sedima* at 499 (internal quotations omitted). This is a case involving classic organized crime-style tactics involving threats of violence, use of firearms, and intentional acts creating a risk of serious physical injury for the purpose of harming a legitimate business. The RICO claim is focused on the defendants' conduct, and nothing in the orders entered in the state-court litigation stemming from the matters set forth in the "background" section of the complaint diminishes the egregiousness and criminality of the defendants' conduct.

A claim under the Racketeer Influenced and Corrupt Organizations Act has four essential elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

A. <u>CONDUCT OF THE DEFENDANTS</u>

The individual defendants, while engaged in the activities described in the complaint, participated in Vacationaire Estate's affairs. Defendants correctly state that "[l]iability under §1962(c) extends only to those persons associated with or employed by an enterprise who conduct *or participate, directly or indirectly, in* the conduct of such enterprise's affairs through a pattern of racketeering activity." *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (emphasis added here). The defendants then use out-of-context statements of the *Handeen* court to argue that there exists a requirement that a RICO defendant direct or control the enterprise. That was not the holding of *Handeen*, which analyzed whether a defendant-attorney was the attorney for the enterprise or part of the RICO enterprise and held that "[t]he polestar is the activity in question, not the defendant's status." *Id.* at 1349. The Supreme Court's holding in *Reves v. Ernst & Young* that

> An enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it as, for example, by bribery.
>
> * * * * * *
>
> [Section] 1962(c) cannot be interpreted to reach complete "outsiders" because liability depends on showing that the defendants conducted or participated in the conduct of the "enterprise's affairs," not just their own affairs. Of course,

"outsiders" may be liable under § 1962(c) if they are "associated with" an

enterprise and participate in the conduct of its affairs — that is, participate in

the operation or management of the enterprise itself.

*Reves* at 184-85. The complaint contains sufficient allegations of the individual

defendants' participation in the conduct of the affairs of Vacationaire Estates.

B. THE ENTERPRISE

"To establish liability under § 1962(c) one must allege and prove the existence of

two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same

'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533

U.S. 158, 161 (2001). The complaint contains allegations that all of the individual

defendants had been members of Vacationaire Estates, Inc. (hereafter "Vacationaire

Estates"), a corporation and an association under the common interest community laws of

Minnesota, by virtue of ownership of cabins located on real property owned by

Vacationaire Estates (paragraphs 13-20 of the complaint). Accordingly, it is a legal entity

rather than an association-in-fact enterprise. For purposes of RICO claims, the enterprise

can be a corporation while the defendants are employees or owners of the corporation. *Id*.

at 163. The defendants' analysis of the elements of an association-in-fact enterprise, and

its arguments based on that analysis, are unnecessary because the "association-in-fact"

analysis inapplicable to this case. This element is satisfied by the existence of

Vacationaire Estates as the enterprise.

C. PATTERN OF CONDUCT

The complaint contains sufficient allegations of a pattern of conduct by the defendants. "RICO defines a 'pattern of racketeering activity' as 'requir[ing] at least two acts of racketeering activity' occurring within certain time frames." *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 769 (8th Cir. 1992). However, the court explained further that two acts without more are insufficient,

> [T]he concept of a "pattern" requires proof that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity. A relationship between predicate acts exists when the acts are similar in method, purpose, and result. Continuity may be demonstrated by proving a series of related predicates extending over a substantial period of time. Continuity also exists if the predicate acts or offenses are part of an ongoing entity's regular way of doing business, thereby constituting a threat of causing continuous harm in the future. Ultimately, the existence of a pattern is a question of fact.

*Diamonds Plus, Inc. v. Kolber*, 960 F.2d at 769 (internal quotations and citations omitted).

The complaint alleges at paragraph one a "nearly two-year pattern of terroristic actions, terroristic threats, acts of violence, and threats of violence by the Defendants." Some of the specific acts are detailed in paragraphs 47 through 72 of the complaint.

Paragraph sixty-five of the complaint alleges that the conduct continued to the "present".[4] The Eighth Circuit Court of Appeals has held that a district court was "clearly correct" in holding that conduct over "an approximately two year span" constituted a pattern of racketeering activity. *Id.* at 769. The nearly two years of the plaintiffs' suffering is substantial enough to satisfy this element.

### D. RACKETEERING ACTIVITY

The complaint contains allegations of threats of violence against the plaintiffs, implied threats of violence through violence to others associated with the plaintiffs, threats and attempts to inflict damage to property, and threats and attempts to harm the plaintiffs' business for the purpose of forcing the plaintiffs to abandon their claim to a property interest in real property.[5] This meets the definition of "racketeering activity" for purposes of a RICO claim.

Racketeering activity is defined as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion … which is chargeable under State law and punishable by imprisonment for more than one year", or "any act which is indictable under any of the following provisions of title 18, United States Code: … section 1951 (relating to interference with commerce, robbery, or extortion)." 18 U.S.C. §1691 (1). Section 609.27 of the Minnesota Statutes prohibits the making of a threat to do

---

[4] The complaint is dated July 31, 2018.

[5] At the time of the defendants' racketeering activity, the parties' respective interests in the disputed real property were in dispute and had not yet been decided until entry of the state court order dated September 13, 2018. Based on the history of the litigation over the property, and the amount of time and money spent to litigate that dispute, the value of the property was significant.

bodily harm, to inflict damage to the property of the person threatened or another, or to unlawfully injury a business and thereby causes another against the other's will to do any act or forbear doing a lawful act. Although the complaint may not plead with particularity the lawful acts that the plaintiffs forbore as a result of the defendants' threats of violence combined with displays of weapons and discharge of firearms, the allegations of the complaint permit the inference that by their very nature the defendants' threats caused the plaintiffs to take extra precautions and forebear from any activity that would bring them in contact with the defendants where such contact was avoidable. Only the inappropriate heightened pleading standard advocated by the defendants would require such specific allegations to avoid dismissal. At this stage, the plaintiffs need only allege enough facts to raise a reasonable expectation that discovery will reveal evidence to support the claim.[6]

### V. THE PLAINTIFFS HAVE STANDING TO ASSERT THE RICO CLAIM BECAUSE THE PLAINTIFFS' BUSINESS WAS INJURED AS A RESULT OF THE RICO VIOLATION

The Plaintiffs have sufficiently alleged a drop in revenues resulting from the defendants' actions giving rise to the RICO claim. Although the defendants refer to them as "threadbare", the complaint alleges loss of revenue. The allegation that the restaurant was busy during a specific period of time – even if "extremely busy" – does not merit dismissal for failure to allege injury to business. It is an obvious inference from the allegations of the complaint that a hospitality business that relies on customers enjoying their experience while visiting the plaintiffs' restaurant, supper club, resort, or motel

---

[6] Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

would suffer a drop in sales when the customers witness the threatening, violent, vulgar, and dangerous conduct of the defendants.

## VI. THE COMPLAINT PROPERLY PLEADED THE STATE LAW CLAIMS

Each of the state law claims is properly pleaded in the complaint. The state court order does not require dismissal of the state law claims. At best, the state court's decision provides a potential affirmative defense to some of the state law claims. For example, the defendants could argue that the ultimate determination of property rights provide a justification for their conduct giving rise to the state law claim of tortious interference with prospective economic advantage. Justification exists where the defendant asserts in good faith a legally protected interest of his own. *Kjesbo v. Ricks*, 517 N.W.2d 858, 588 (Minn. 1994). "Ordinarily, whether interference is justified is an issue of fact, and the test is what is reasonable conduct under the circumstances." *Id*. Nothing in the state court's order or in the allegations of the complaint supports dismissal of the state law claims on the affirmative defense of justification.

### A. NUISANCE

The defendants correctly reproduced the text of Minn.Stat. §561.01, which does not support their argument. Regardless of ownership of the disputed real property, the defendants' conduct interfered with the plaintiffs' use of their own property. Late-night gunfire on an adjacent parcel fits the definition of "[a]nything which is offensive to the senses … so as to interfere with the comfortable enjoyment of life or property." So do the threats and vulgar language described in the complaint. This claim is properly pleaded.

B. DEFAMATION

The statements set forth in page two of Exhibit F and Exhibits G through J, are defamatory because they are false statements communicated to the general public that tend to harm the reputation of the plaintiffs in their business. They are not opinion, as argued by the defendants, because they capable of being proven true or false and are reasonably interpreted as stating actual facts. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Exhibit F states that the plaintiffs are aggressive people and implies that they are dangerous to the point that the sheriff's protection is necessary. The statements contained in Exhibit G through I make factual statements regarding undercooked food and food served at unsafe temperatures. The statements contain facts that are provable as true or false. The danger of consuming undercooked food makes it nearly certain that those statements harm the reputation of the plaintiffs in their business. Exhibit J contains statements accusing the plaintiffs of engaging in harassment and inducing their customers to threaten the author. It is a statement of fact to the public that alleges potentially criminal conduct and tend to harm the reputation of the plaintiffs.

C. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

The Minnesota Supreme Court reaffirmed its longstanding recognition of the tort of tortious interference with prospective economic advantage in *Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210 (Minn. 2014). That case did not address a motion to dismiss for failure to state a claim upon which relief can be granted. The court did hold that "a plaintiff must specifically identify a third party with

whom the plaintiff had a reasonable probability of a future economic relationship." *Id.* at 221-22. It did not, however, make that a pleading requirement. The Federal Rules of Civil Procedure do not require specific identification to be pleaded to survive a motion to dismiss. The reasonable inference that the plaintiffs had customers who may have become returning customers had they not been frightened by the defendants' gunfire should be sufficient for the claim to survive the defendants' motion to dismiss. Identification of specific customers can be provided through discovery or in response to a motion for summary judgment.

WHEREFORE the Plaintiffs respectfully request that the Court deny the Defendants' motion to dismiss and order the defendants file an answer to the complaint within fourteen days of the order.

Dated: October 11, 2018.

KIRSCHER LAW FIRM, PA

By:   **s/ Bradley Kirscher**
Bradley Kirscher (MN Bar No. 0318528)
Attorney for the Plaintiffs
2489 Rice Street, Suite 121
Roseville, MN 55113
T: (651) 209-8440 / F: (866) 880-6386
brad@kirscherlawfirm.com